IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIESHA CUFFY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-05722 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ILLINOIS SECRETARY OF STATE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kiesha Cuffy worked for Defendant Illinois Secretary of State ("ISOS") as a public service representative at a local drivers service facility. After she allowed a friend to obtain a restricted driving permit without taking the required road test, Cuffy was disciplined and ultimately discharged. Yet she contends that similarly situated ISOS employees engaged in the same conduct without being disciplined, and she alleges that she was treated differently due to her race, sex, and disability, and in retaliation for engaging in a protected activity. For that reason, Cuffy has brought the present action, and her Second Amended Complaint ("SAC")[1] asserts claims against the ISOS pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as claims against her then-supervisor, Defendant Robert Spizzirri, under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Defendants have filed a motion to dismiss the SAC

---

[1] As Defendants point out, the document captioned the "Second Amended Complaint" is actually the fourth pleading filed on behalf of Cuffy—the first two were filed close in time by Cuffy when she was still proceeding *pro se* (*see* Dkt. Nos. 6, 7), and the latter two were prepared by her recruited pro bono counsel (*see* Dkt. Nos. 18, 35). For ease of reference, in this opinion, the Court will refer to the operative complaint at Docket Number 35 as the "Second Amended Complaint" or "SAC."

pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 40.) For the reasons that follow, Defendants' motion is denied.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the SAC as true and views those facts in the light most favorable to Cuffy as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The SAC alleges as follows.

Cuffy, an African-American woman, went to work for the ISOS in June 2016. (SAC ¶¶ 5, 12, Dkt. No. 35.) Throughout her employment, Cuffy worked as a public service representative at the ISOS's drivers service facility in Naperville, Illinois. (*Id.* ¶¶ 8, 12.) Until the events relevant to this litigation, Cuffy was consistently regarded by her superiors as an exemplary employee, and she once received a letter from the ISOS commending her for her customer service. (*Id.* ¶¶ 2, 13.)

In November 2019, Cuffy returned to work at the Naperville facility after maternity leave. (*Id.* ¶ 14.) Around the time of her return, she requested a transfer to the Aurora drivers service facility, which was closer to her home. (*Id.*) When she spoke with the ISOS's human resources officers, Cuffy explained that she was struggling with postpartum depression and believed that a transfer to a facility near her home would accommodate her condition by allowing her to breastfeed her newborn child during her lunch breaks. (*Id.*) Despite multiple requests to several different agents of the ISOS, Cuffy never received a response to her transfer request and the ISOS never initiated the interactive process regarding a reasonable accommodation for her postpartum depression. (*Id.*)

Meanwhile, Cuffy resumed working at the Naperville facility, now under the supervision of Spizzirri, who had taken over as the facility's manager while she was on leave. (*Id.* ¶ 15.)

Shortly after her return, Cuffy's male coworkers began to make harassing remarks to her about her appearance. (*Id.*) Among other things, her coworkers made comments such as: "Mmm, your butt looks nice" and "what you're wearing fits your body perfectly." (*Id.*) In addition, they would make sexual noises, like "mmm, mmm, mmm," in her direction. (*Id.*) This conduct occurred in front of Spizzirri, but not only did he not take any action to stop the behavior, at times he would laugh at it. (*Id.* ¶ 16.)

During her tenure at the Naperville facility, Cuffy observed a common practice among white male employees of allowing friends and family to obtain driving permits and licenses without taking the necessary road test. (*Id.* ¶¶ 17–19.) Spizzirri was aware of this practice and had participated in it himself. (*Id.* ¶¶ 18–19.) Thus, when Cuffy's childhood friend visited the facility on February 6, 2020 to apply for a restricted driving permit, she issued him the permit without requiring him to take the road test. (*Id.* ¶ 17.) Unlike her white male coworkers, however, Cuffy was disciplined for doing so. (*Id.* ¶ 20.) Specifically, she was prohibited from processing driver's licenses or giving road tests, and she was also placed in a restricted and monitored work area separate from her coworkers. (*Id.*) Those disciplinary measures remained in place from February 11, 2020 to March 14, 2020, when the Naperville facility closed temporarily due to the COVID-19 pandemic. (*Id.* ¶¶ 20–21.)

When the Naperville facility reopened on June 1, 2020, Cuffy continued to be restricted and monitored in her work. (*Id.* ¶ 22.) Further, she was assigned to one of the busiest areas of the facility, where she had to interact with hundreds of visitors on a daily basis. (*Id.*) Being around so many people every workday gave Cuffy anxiety about potentially contracting COVID-19 and

exposing her infant child to the virus, and that anxiety, in turn, exacerbated Cuffy's postpartum depression. (*Id.* ¶¶ 22, 25.)

On June 17, 2020, Cuffy was called into Spizzirri's office for a meeting. (*Id.* ¶ 23.) Although she expected the meeting to be about the ongoing disciplinary measures stemming from the February 6 incident, Spizzirri and others instead spoke with Cuffy about her coworkers' unprofessional conduct. (*Id.*) At some point during the meeting, Cuffy asked whether the disciplinary measures against her would be lifted and she was told that they would remain in place. (*Id.* ¶ 24.) In addition, Cuffy informed Spizzirri that she was in constant fear of contracting COVID-19 and infecting her child, given the amount of face-to-face interactions she had with visitors to the facility. (*Id.*) By July 16, 2020, her working conditions had worsened Cuffy's postpartum depression to the point that her doctor recommended that she take a one-week leave of absence from work. (*Id.* ¶ 25.) When she requested medical leave, the ISOS told her that she could not use her sick time and her leave would be unpaid. (*Id.*)

Following an extended period with no further updates regarding her disciplinary status, on August 19, 2020, Cuffy received a letter from the ISOS informing her that she was being considered for discharge as a result of her conduct on February 6. (SAC ¶ 27; SAC, Ex. 4, Proposed Discharge Letter, Dkt. No. 35-4.) The letter further informed Cuffy that she was suspended pending discharge and barred from ISOS property until a final decision was made. (Proposed Discharge Letter.) Finally, Cuffy was directed, upon receipt of the letter, to turn in her work identification and work supplies to her supervisor. (*Id.*) The letter did allow her a short period of time to submit a statement in her defense, an opportunity of which she availed herself. (SAC ¶ 27.) Nonetheless, the ISOS informed Cuffy in a letter dated August 28, 2020, that she was terminated effective as of that date, although she had a right to appeal the discharge to the

4

ISOS's Merit Commission. (SAC ¶ 28; SAC, Ex. 6, Termination Letter, Dkt. No. 35-6.) Cuffy received the termination letter on September 8, 2020. (SAC ¶ 29.)

Cuffy unsuccessfully appealed her termination to the Merit Commission. (*Id.* ¶¶ 30–31.) Subsequently, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 1, 2021. (*Id.* ¶ 35.) The EEOC decided not to pursue Cuffy's claim and issued her a Notice of Right to Sue. (*Id.* ¶ 37.) Cuffy then initiated the present action on October 26, 2021. (*Id.* ¶ 40.) In the SAC, Cuffy asserts claims against the ISOS pursuant to Title VII for discrimination based on race and sex, and for sexual harassment (Counts I–III), as well as under the ADA for disability discrimination and retaliation (Counts IV–V). She also asserts claims against Spizzirri for discrimination in employment based on race under § 1981 (Count VI), and for race, sex, and disability discrimination under § 1983 (Count VII).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants contend that the SAC must be dismissed in its entirety. The Court first addresses Defendants' contention that the Title VII and ADA claims in Counts I through V are time-barred. Should Defendants' timeliness contentions prove unavailing, the Court will turn to address Defendants' argument that Cuffy failed to exhaust her administrative remedies with

5

respect to the retaliation claim in Count V. Finally, the Court will consider the sufficiency of Count VI's § 1981 claim and Count VII's § 1983 claim.[2]

### I. Timeliness of Title VII and ADA Claims

Under both Title VII and the ADA, a plaintiff must file a discrimination charge with the EEOC "within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42 U.S.C. § 2000e-5(e)(1)); *see also* 42 U.S.C. § 12117(a) (incorporating Title VII's limitations period into the ADA).[3] The untimeliness of an EEOC charge presents an affirmative defense that a plaintiff need not anticipate and overcome in their complaint. *E.g.*, *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 757 (N.D. Ill. 2020). "A court may dismiss a claim based upon an affirmative defense, however, if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Rosas v. Bd. of Educ. of City of Chi.*, No. 19-CV-02778, 2023 WL 415183, at *10 (N.D. Ill. Jan. 25, 2023) (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008)).

According to Defendants, Cuffy's July 1, 2021 EEOC charge was submitted more than 300 days after she was terminated by the ISOS, and therefore her Title VII and ADA claims are time-barred. Central to Defendants' untimeliness claim is their contention that Cuffy's true termination date was August 19, 2020—*i.e.*, the date on which she received the letter notifying

---

[2] In their opening brief, Defendants challenge Cuffy's ADA claim insofar as she alleges a failure to accommodate her based on a "regarded as" theory of disability. But Cuffy denies that her ADA claim is based on a "regarded as" theory. Accordingly, the Court need not address Defendants' arguments on that issue.

[3] Title VII requires that a charge of discrimination be filed within 180 days after the occurrence of the alleged unlawful employment practice, 42 U.S.C. § 2000e-5(e)(1), but provides that "a plaintiff in a deferral state such as Illinois must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the 'alleged unlawful employment practice,'" *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)(1)).

her that she was being considered for discharge and was suspended pending discharge. If Cuffy is deemed terminated as of that date, then her EEOC charge was untimely. Cuffy, however, argues that she was not terminated until September 8, 2020—when she received the letter notifying her of the ISOS's final decision discharging her from employment. Her EEOC charge was filed within 300 days of September 8, 2020, and thus her Title VII and ADA claims would be timely if that is treated as the date of discharge.

To determine the date on which an employee's termination occurred, the Court must consider "when the employer shows, by acts or words, clear intention to dispense with the employee's services." *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002). There are two elements to this inquiry. "First, there must be a final, ultimate, non-tentative decision to terminate the employee. . . . Second, the employer must give the employee 'unequivocal' notice of its final termination decision. Both of these elements are necessary to start the limitations period; neither alone is sufficient." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citations omitted).

Here, Cuffy contends that the ISOS's August 19, 2020 letter was too equivocal to constitute notice of a final termination decision. In particular, Cuffy notes that the letter only informed her that she was "being considered for discharge" and gave her an opportunity to submit a statement in her defense. (SAC ¶ 27.) It was only in the letter that she received on September 8, 2020 that she was advised of a final termination decision. (*Id.* ¶¶ 28–29.) Defendants, however, assert that the August 19 letter amounted to a *de facto* termination, emphasizing that "when the first decision is connected to and implies the second—when, in other words, a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent—the time starts with the initial decision." *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th

7

Cir. 1992). Although the August 19 letter purported only to suspend Cuffy pending a discharge, Defendants claim that she should have known from the letter that her employment with the ISOS was over, as it directed her to turn in her employee identification and work supplies, and prohibited her from being present on ISOS property. That the letter offered Cuffy an opportunity to submit a statement in her defense is immaterial, according to Defendants, as "an employer who communicates a willingness to later change a ***final*** decision of termination, as through an appeals process, does not render a decision 'tentative' and not final for the purposes of beginning the limitations period." *Flannery*, 354 F.3d at 637.

    The Court agrees with Cuffy that the August 19 letter, by itself, did not unequivocally notify her of a final termination decision. Indeed, the letter gave multiple indications that it was not announcing a final decision. As already discussed, the letter informed Cuffy only that she was being considered for discharge—it twice referred to her "***proposed*** discharge." (Proposed Discharge Letter (emphasis added).) Not only did the letter state that Cuffy would have an opportunity to submit a statement or evidence in her defense, it further explained that the information she submitted would "be considered ***before a final decision is made***." (*Id.* (emphasis added).) The letter advises that Cuffy would receive notification of such decision after the expiration of her rebuttal period. And in announcing her suspension pending discharge, the letter provided that her suspension would be in place "until a final decision is made in [her] case." (*Id.*) In short, Cuffy could have reasonably believed based on the August 19 letter that any discharge decision was tentative and not final. *See, e.g.*, *Flannery*, 354 F.3d at 641 ("Requiring employees . . . to file EEOC charges on the basis of ambiguous conversations regarding termination would cause a flood of false charges . . . ."); *Williams v. Lincoln Fin. Grp.*, No. 1:17-CV-50, 2018 WL 3536419, at *4 (N.D. Ind. July 23, 2018) ("Notice is ***not*** unequivocal if the

employee is unsure of his employment status after receiving the notice." (internal quotation marks omitted)).

Defendants rely on a series of cases involving a sanitary-district employer to argue that Cuffy should have known that her suspension pending discharge was a *de facto* termination. In each case, the plaintiff employee was suspended pending termination by the sanitary-district employer, with charges to be heard and approved by a separate civil service board. *Escobedo v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 16 CV 11668, 2018 WL 4931687, at *1 (N.D. Ill. Oct. 11, 2018); *Myers v. Metro. Water Reclamation Dist.*, No. 04 C 6777, 2005 WL 991899, at *2 (N.D. Ill. Apr. 11, 2005); *Rogers v. Metro Water Reclamation Dist.*, No. 01 C 2271, 2001 WL 1835161, at *1 (N.D. Ill. Dec. 17, 2001). The Court finds these cases inapposite because of how the termination process was structured. Essentially, the sanitary-district employer's decision to suspend the plaintiff without pay[4] was treated as a final decision and the proceedings before the civil service board were deemed to be an appeals process. *See Myers*, 2005 WL 991899, at *2 (determining that the discriminatory act occurred when the plaintiff "was suspended pending termination, not when the [civil service board] eventually denied his appeal and made his termination official"); *Rogers*, 2001 WL 1835161, at *1 ("In November 2000, the Civil Service Board approved an employment decision that was made, and for all practical purposes, executed, in 1998."); *see also* 70 ILCS 2605/4.14. By contrast, here, the ISOS's own decisionmaking process was ongoing, as shown by the willingness to consider Cuffy's statement in her defense prior to making a final decision. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (distinguishing between those procedures that offer "a ***remedy*** for a

---

[4] Here, both the SAC and the exhibits are silent as to whether Cuffy was denied pay during her suspension.

prior decision," the existence of which does not render the earlier decision tentative, and an employee's opportunity "to *influence* that decision before it is made").[5] Indeed, the same individual who issued the August 19 letter was also the individual who received and considered Cuffy's statement in defense. (*Compare* Proposed Discharge Letter (signed by Stephan J. Roth, Director of Department Personnel), *with* Termination Letter (signed by Stephan J. Roth and explaining that Cuffy's "rebuttal was carefully considered but did not cause [him] to alter [his] decision in this matter").) That Cuffy's opportunity to submit a statement in her defense was not the equivalent of an appeal is reinforced by the fact that Cuffy was first advised of her right to appeal her discharge in the letter she received on September 8, 2020. (Termination Letter ("A certified employee who has been served with approved charges of discharge may appeal to the ISOS of State Merit Commission . . . .").)

Based on the allegations in the SAC and its relevant exhibits, the Court cannot find that Cuffy had unequivocal notice of her termination prior to September 8, 2020. For that reason, the Court rejects Defendants' contention that the Title VII and ADA claims must be dismissed as untimely and denies Defendants' motion to dismiss Counts I through V.

    **II.    Exhaustion of Administrative Remedies as to Retaliation Claim**

In the event that the Title VII and ADA claims cannot be dismissed as time-barred, Defendants contend that the Court still must dismiss Count V's retaliation claim because Cuffy failed to exhaust her administrative remedies prior to bringing suit.

---

[5] Defendants believe that Cuffy's ability to submit a rebuttal was an opportunity to remedy a prior decision of the ISOS. However, in making that argument, they ignore the import of the August 19 letter's assurance that Cuffy's defense would "be considered before a final decision is made." (Proposed Discharge Letter.) That language strongly suggests that Cuffy was being offered an opportunity to influence the ultimate decision.

To assert a Title VII or ADA claim in federal court, a plaintiff must first exhaust her administrative remedies with the EEOC. *E.g.*, *Travis v. Cook-DuPage Transp.*, No. 11 C 6080, 2012 WL 1284022, at *2 (N.D. Ill. Apr. 16, 2012). Then, upon receiving a right to sue letter, a plaintiff may bring suit only as to "those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal quotation marks omitted). Defendants argue that because Cuffy's EEOC charge does not show a checked box for "retaliation" and her retaliation claim is not like or reasonably related to the charge's allegations, it must be dismissed for failure to exhaust.

The Court agrees that Cuffy's EEOC charge did not explicitly allege "retaliation," although that is not determinative of the exhaustion question. *See, e.g.*, *Medina v. J.P. Morgan Inv. Mgmt., Inc.*, No. 15 CV 11611, 2016 WL 2958613, at *3 (N.D. Ill. May 23, 2016) ("Though he did not check the box for 'retaliation,' [the plaintiff] did describe facts that could suggest he was fired for engaging in protected activity."). Instead, the exhaustion question turns on whether Cuffy's retaliation claim falls within the scope of her charge's allegations. In undertaking this inquiry, the Court is mindful that because "most EEOC charges are completed by laypersons rather than by lawyers, a Title VII [or ADA] plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Thus, Cuffy's retaliation claim should not be dismissed "simply because [the charge] failed to incorporate the correct legal terminology." *Macchia v. Loyola Univ. Med. Ctr.*, No. 04 C 5049, 2004 WL 2392201, at *5 (N.D. Ill. Oct. 25, 2004).

11

"[T]o be like or reasonably related to an administrative charge, the relevant claim and the administrative charge must, at minimum, describe the same conduct and implicate the same individuals." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013) (internal quotation marks omitted). Here, Cuffy's retaliation claim alleges that Cuffy requested a reasonable accommodation for her postpartum depression disability and, in retaliation, was terminated just weeks after her request. (SAC ¶¶ 62–63.) On the other hand, Cuffy's EEOC charge alleges, in relevant part: "[The ISOS] is aware of my disability. During my employment, I requested a reasonable accommodation which was not provided. I was also subjected to sexual harassment. On or about August 24, 2020, I was discharged." (SAC, Ex. 1, EEOC Charge, Dkt. No. 35-1.)

The Seventh Circuit has observed that "[n]ormally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). However, "this is not a per se rule." *Alibuxsh v. Extractor Corp.*, No. 19 C 03032, 2020 WL 10937721, at *2 (N.D. Ill. Dec. 18, 2020). Given "the liberal pleading standard applied to EEOC charges," a retaliation claim will survive dismissal under Rule 12(b)(6) so long as "a fair reading of the [EEOC charge's] narrative would support an inference of retaliation." *Macchia*, 2004 WL 2392201, at *5. Accordingly, courts have found ADA retaliation claims to be like or reasonably related to allegations substantially similar to those Cuffy made in her EEOC charge. *E.g.*, *Alibuxsh*, 2020 WL 10937721, at *3 ("[I]n insisting that [the plaintiff] has not exhausted his ADA retaliation claim, [the defendant] conveniently overlooks simple but important language: [The plaintiff's] attestation in his EEOC charge that he requested an accommodation, and, seemingly as a result, was terminated . . . ." (internal quotation marks omitted)); *Lahey v. Ill. Bell Tel. Co.*, No. 13 C 8252, 2014 WL 1884446, at *3 (N.D. Ill. May 9, 2014) (finding the discrimination claim in the

plaintiff's EEOC charge to be reasonably related to the complaint's retaliation claim where "both allege that [the plaintiff] requested accommodation from [the defendant] and was denied such accommodation" and that the plaintiff "was fired shortly thereafter").

In her EEOC charge, Cuffy alleges both that she engaged in a protected activity—*i.e.*, requesting a reasonable accommodation for her disability—and a subsequent adverse employment action—her termination. Likewise, the SAC's retaliation claim alleges that Cuffy was retaliated against for the protected activity of requesting an ADA accommodation. Further, the retaliation claim and the EEOC charge both describe the same conduct and implicate the same individuals. Thus, Cuffy's retaliation falls within the scope of her EEOC charge, and the Court declines to dismiss Count V on exhaustion grounds.

### III. Section 1981's Applicability to a State Actor

Count VI alleges that Cuffy's supervisor, Spizzirri, discriminated against Cuffy on the basis of race in violation of § 1981. Spizzirri, in his capacity as an employee of the ISOS, was unquestionably a state actor. And because § 1981 provides no private right of action against a state actor, Defendants argue that Count VI must be dismissed.

In *Jett v. Dallas Independent School District*, 491 U.S. 701, 735–36 (1989), the Supreme Court held that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Notwithstanding a subsequent amendment to § 1981, the Seventh Circuit has reaffirmed that "*Jett* remains good law, and consequently § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors." *Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 671 (7th Cir. 2014). Based on this precedent, Defendants contend that Cuffy's § 1981 claim fails because it is brought directly under § 1981 rather than through § 1983.

That Count VI does not expressly state that the § 1981 claim is brought pursuant § 1983 is not fatal to the claim, however. "After all, plaintiffs do not need to plead legal theories, such as section numbers, and little usually can be gained by requiring a plaintiff to replead a § 1981 claim to specifically mention Section 1983." *Edmond v. City of Chicago*, No. 17-cv-04858, 2018 WL 5994929, at *6 (N.D. Ill. Nov. 15, 2018) (internal quotation marks omitted). For that reason, courts routinely decline to require any explicit mention of § 1983 for § 1981 claims pleaded against state actors. *E.g.*, *Bunch v. County of Lake*, No. 15 C 6603, 2016 WL 1011513, at *3 (N.D. Ill. Mar. 14, 2016). Rather, such claims are construed as arising under § 1983. *Edmond*, 2018 WL 5994929, at *6. Cuffy's § 1981 claim against Spizzirri is therefore properly treated as arising under § 1983, and Defendants' motion to dismiss Count VI is denied.

### IV. Timeliness of § 1983 Claim

Along with the § 1981 claim that the Court construes as brought pursuant to § 1983, Cuffy also asserts a standalone § 1983 claim alleging that Spizzirri violated her rights under the Fourteenth Amendment's Equal Protection Clause. Defendants contend that Count VII's standalone § 1983 claim must be dismissed as time-barred.

The statute of limitations for a § 1983 claim is "governed by the personal injury laws of the state" in which the injury occurred. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). Since Cuffy's injury occurred in Illinois, the statute of limitations is two years. *See* 735 ILCS 5/13-202.[6] And a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Hileman*, 367 F.3d at 696 (internal quotation marks

---

[6] Although Count VI's § 1981 claim arises under § 1983, because that claim was only made possible by the Civil Rights Act of 1991's amendment to § 1981, it is subject to the four-year limitations period set forth in 28 U.S.C. § 1658. *Okoro v. Cook Cnty. Health & Hosp. Sys.*, No. 19-cv-06061, 2021 WL 2413152, at *5 (N.D. Ill. June 14, 2021).

omitted). Thus, Cuffy's claim accrued on the date that she received notice of her termination. Consistent with its holding above regarding the date on which Cuffy received unequivocal notice of her termination, the Court finds that the § 1983 claim accrued on September 8, 2020. Since the § 1983 claim was first asserted in the SAC, which was filed on November 29, 2022, that claim must relate back to the original complaint to avoid dismissal on timeliness grounds.

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Defendants contend that the SAC's § 1983 claim cannot relate back to the Title VII and ADA claims asserted in the original complaint because those claims were themselves untimely due to Cuffy's failure to file her EEOC charge within the 300-day window. Of course, that contention is unavailing given the Court's above rejection of Defendants' arguments regarding the purported untimeliness of the Title VII and ADA claims. Defendants do not assert that there is any other impediment to finding that the § 1983 claim relates back under Rule 15(c)(1)(B). Consequently, Defendants' motion to dismiss Count VII is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the SAC (Dkt. No. 40) is denied.

ENTERED:

Dated: September 13, 2023

_____
Andrea R. Wood
United States District Judge